**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL T. YOUNG, | ) | CASE NO.   3:18-cv-02933-SO |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| LYNEAL WAINWRIGHT, | ) | |
| Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | | |

Petitioner, Randall T. Young, (Petitioner or Young), challenges the constitutionality of his conviction in the case of *State of Ohio v. Young*, Erie County Court of Common Pleas Case No. 2015-CR-0013. (R. 1, PageID # 1). Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Lyneal Wainwright (Respondent) has filed an Answer/Return of Writ, and Petitioner has filed a Traverse. (R. 13; R. 20). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

**I.      Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C.

§ 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence."). The Sixth District Court of Appeals (state appellate court) summarized the facts underlying Petitioner's conviction as follows:

> The following undisputed facts are relevant to this appeal. On December 29, 2014, appellant relocated from Memphis, Tennessee to Sandusky, Ohio. Appellant moved into the Sandusky apartment of co-defendant, Thaddious Jefferson, and his girlfriend. The record shows that appellant possessed multiple convictions for aggravated robbery and was well known by law enforcement agencies in Tennessee.
>
> At approximately midnight on December 31, 2014, Joshua McDowell and Tom Ewald, two Shell gas station employees, were transferring cash from the register into the store safe. While McDowell had his back turned towards the register, a masked man entered the station, pointed a gun at McDowell, and ordered him to lie on the floor.
>
> The gunman ordered Ewald to give him all of the money and threatened to shoot if the police showed up. The cash stolen in the robbery included a substantial quantity of change. The New Year's Eve robber wished the victims a happy new year and left the station with approximately $993.09 in cash and change. Immediately after the robber left, the victims called 9-1-1. McDowell conveyed to the 9-1-1 operator that the suspect would be carrying a Shell station bag full of change.
>
> Shortly thereafter, the responding officers arrived on scene and began reviewing the Shell station's security camera video footage. Around the same time, appellant's co-defendant was observed walking in the vicinity of the gas station and was stopped by officers. Although later found to have been involved in the crime, the co-defendant was ruled out as being the masked gunman based upon review of the video footage. Because a substantial amount of change was stolen in the robbery, the detective in charge of the investigation examined the available video from the local Kroger Coinstar machine. Although the Coinstar machine had no internal camera, a store camera was positioned in the vicinity of the machine.
>
> That footage showed a man who the detective determined to be a match of the masked gunman from the Shell robbery. In the Kroger footage, the man is wearing the exact same clothing as the Shell station robber. The video also shows the man filling out a Western Union money order form which was used to send money to a woman in Tennessee, appellant's home state. The form included the sender's address, phone number, and appellant's name, Randal Young.

Upon discovery of appellant's name and address, the detective called the Memphis Police Department. The detective forwarded the Memphis Police Department the name and photos from the Shell station and Kroger video footage in an email. Memphis Police were familiar with appellant given his criminal history in their jurisdiction. One officer had previously interviewed appellant, and was able to positively identify appellant from the video footage. The Sandusky detective next tracked appellant to the local apartment where he had been staying at since late December.

On January 5, 2016,[1] a man attempted to break into an ATM machine in Sandusky, Ohio and triggered an alarm on the machine. Police responded to the scene and reviewed the surveillance video from the ATM. The video showed a man trying to break into the ATM with a crowbar. The ATM machine had distinct lime-green paint on its exterior. Detectives identified the ATM thief as the same man in the Kroger and Shell station security footage. Police also matched footprints near the ATM with the boots appellant wore when he was arrested for the Shell station robbery. When officers searched appellant's apartment they recovered a crowbar with the same distinct lime-green paint as was on the exterior of the ATM.

On January 6, 2016,[2] during a police interview, the co-defendant denied that he and appellant had any involvement with the Shell station or the ATM robbery. However, on April 10, 2016,[3] the co-defendant entered into a plea agreement. Pursuant to the plea agreement, the co-defendant disclosed that he gave appellant a gun and dropped appellant off near the Shell station on the night of the robbery. He further revealed that appellant returned to their apartment that night and gave him $100 of the stolen money. The co-defendant testified to these events at appellant's trial.

On December 11, 2015, the jury found appellant guilty on all counts and further determined him to be a repeat violent offender. Appellant was sentenced to a total term of incarceration of 36 years. This appeal ensued.

(R .13.1, Ex. 14[4,] *State v. Young*, 6th App. Dist. No. E-16-003, 2017-Ohio-4476, ¶¶ 3-11 (June 23,

---

[1] The state appellate court's statement of facts contains date typographical errors, referring to 2016 instead of 2015. According to the indictment, the gas station robbery occurred on December 31, 2014, and the ATM attempted robbery occurred on January 5, 2015, not 2016. (R. 13-1, PageID# 92-94).

[2] According to the transcript, Police interviewed the co-defendant on January 6, 2015 (R. 13-3, PageID# 1008), and the plea agreement was dated April of 2015.

[3] *See* n. 2.

[4] All referenced exhibits are located at R. 13.1, unless otherwise stated.

2017)).

## II.    Procedural History
### A.    Conviction[5]

On January 14, 2015, an Erie County Grand Jury returned a ten-count indictment, charging Young with one count of aggravated robbery (count 1), one count of theft (count 2), two counts of safecracking (counts 3, 7), two counts of felonious assault (counts 4, 5), one count of having weapons while under disability (count 6), one count of vandalism (count 8), one count of attempted theft (count 9), and one count of possession of criminal tools (count 10). (Ex. 1, Indictment). Counts one through six contained firearm specifications. *Id.* Young pled not guilty to the charges. (Ex. 2, Arraignment Judgment Entry). On March 11, 2015, the grand jury indicted Young with repeat violent offender specification ("RVO") as to counts 1, 4, and 5. (Ex. 3, Indictment-Specification). Young plead not guilty to the repeat violent offender specification. (Ex. 4, Arraignment Judgment Entry March 24, 2015). On December 10, 2015, the trial court granted the government's motion to amend the indictment to change the language in count 1 charging aggravated robbery. (Ex. 5, Motion to Amend Indictment; Ex, 6, Judgment Entry Amended Indictment).

The matter proceeded to a jury trial on December 11, 2015. The jury found Young guilty on all counts and specifications charged. (Ex. 7, Verdict Forms). On December 15, 2015, Young was sentenced to 36 years of incarceration. (Ex. 8, Judgment Entry Sentence).

### B.    Direct Appeal[6]

---

[5] Petitioner's trial docket, 2015-CR-0013, is located at Ex. 63.
[6] Petitioner's direct appeal docket, E-16-003, is located at Ex. 64.

On January 14, 2016, Young, through counsel, appealed the December 15, 2015, Judgment to the Sixth District Court of Appeals, Erie County, Ohio. (Ex. 9, Notice Appeal, *State v. Young*, No. E-16-003, 2017-Ohio-4476, "Young 1").

On direct appeal, Young set forth the following assignments of error:

1. Appellant received constitutionally ineffective assistance of counsel and was deprived of a fair trial and due process of law as guaranteed by the 14th Amendment to the U.S. Constitution and Section 16, Article I of the Ohio Constitution.

2. The trial court committed prejudicial error in permitting the jury to determine the existence and nature of appellant's prior conviction of an offense of violence, in violation of R.C. 2941.149.

(Exhibit 11, Young's Brief). The State responded, (Ex. 12), and Young replied (Ex. 13).

The state appellate court rejected Young's arguments regarding the first assignment of error. (Ex. 14, *Young I,* PageID#: 219-221). There Young claimed his trial "counsel was ineffective by: (1) failing to object to the detective's testimony regarding the co-defendant's plea agreement; (2) failing to object to testimony about appellant's prior criminal record; (3) failing to object to police identification of appellant in pictures and emails during testimony." *Id.*

However, the state appellate court found that the trial court erred in allowing the jury to determine Young's repeat violent offender status, thereby finding Young's second assignment of error well-taken. (Ex. 14, at ¶¶ 17-20 (overruling prior district case law)). The court further found that the error was harmless because Young's prior convictions would have been admissible to establish the elements of the possession of weapons under disability charge and "there would have been no reasonable probability that this evidence may have contributed to [Young's] underlying convictions." *Id.* at ¶21. On June 23, 2017, the state appellate court remanded the case for resentencing, limited to the RVO specification. *Id.* at ¶22.

### 1. Motion for Reconsideration/Motion to Correct the Record

On July 10, 2017, Young filed a *pro se* application for reconsideration of the state appellate court's June 23, 2017 judgment, pursuant to App. R. 26(A). (Ex. 34, Motion for Reconsideration). Petitioner argued that the state appellate court erred when it concluded that the submission of the RVO specification to the jury, although in error, was harmless. (Ex. 34). He also argued that the presentation of his entire criminal history to the jury was prejudicial, and he disagreed that there was overwhelming evidence of his guilt. *Id.*

On July 19, 2017, the state appellate court denied the application for reconsideration, concluding it was untimely filed and that he did not prove substantive grounds for relief. (Ex. 35, Decision and Judgment). The state appellate court's judgment noted the appeal was "in connection to appellant's multiple felony convictions arising from appellant's participation in several commercial business armed robberies in Sandusky, Ohio, on and around New Year's Eve of 2014." (Ex. 35). Young filed a motion to correct the record, on August 3, 2019, asserting that in the foregoing judgment, the state appellate court "made an incorrect and prejudicial statement against appellant in their ruling Decision & Judgment, p. 1 of 3 stating: '…Appellant's participation in several commercial business armed robberies in Sandusky, Ohio on or around New Years eve of 2014.'" (Ex. 36). Young argued that the evidence did not support this statement, and that the record reflects that he was convicted of one aggravated robbery in which there were multiple felony convictions attached to that occurrence, not several armed robberies. (Ex. 36).

The state appellate court denied this motion on August 21, 2017, concluding that it was untimely and without merit. (Ex. 37, Decision and Entry, No. E-16-003).

### 2. Appeal to the Ohio Supreme Court

On July 24, 2017, Young, *pro se*, filed a timely appeal of the state appellate court's June

23, 2017 Judgment to the Ohio Supreme Court. (Exhibit 28, Notice of Appeal, Case No. 17-1006)

In his memorandum in support of jurisdiction and his supplemental memorandum, Young asserted

the following propositions of law:

> I. The trial court committed prejudicial error in permitting the jury to determine the existence and nature of appellant's prior conviction for an offense of violence, in violation of R.C. 2941.149.
>
> II. Appellant received constitutionally ineffective assistance of counsel and was deprived of a fair trial and due process of law as guaranteed by the 14th Amendment to the U.S. Constitution and Section 16, Article I of the Ohio Constitution.
>
> III. The Sixth Appellate District committed prejudicial error and possible Due Process Violations, when it rendered and journalized its decision to deny Appellants Motion for Reconsideration based on a mischaracterization of the facts.

(Ex. 29, Memorandum in Support of Jurisdiction; Ex. 30, Supplement of Memorandum in Support

of Jurisdiction).

The State filed an Opposition, and Young filed an amended memorandum in support of

jurisdiction. (Ex. 31, Memorandum in Opposition of Jurisdiction; Ex. 32, Amended Memorandum

in Support of Jurisdiction). The Ohio Supreme Court declined to accept jurisdiction of the appeal,

pursuant to S.C.Prac.R. 7.08(B)(4), on December 20, 2017. (Ex. 33, Entry, Case No. 17-1006)

### 3. Application to Reopen Appeal

On September 11, 2017, Young filed an application to reopen his direct appeal in the state

appellate court pursuant to App. R. 26(B). (Ex. 38, Appellant's Application for Reopening Appeal,

E-16-0003). Young claimed his appellate counsel was ineffective by not raising the following

assignments of error, verbatim:

> 1. Appellate counsel was ineffective for failing to file a motion to certify a conflict pursuant to App.R.25 depriving Appellant of Due Process rights & Equal protection of the Law as guaranteed by the 14th Amendment of the

U.S. Constitution and section 16, Article I of the Ohio Constitution.

2.    Appellant Counsel was ineffective for failure to raise the Issue that a Pre-trial motion requesting an Expert witness was not ruled on before trial which denied the Appellant a fair trial in violation of, Ohio Constitution I § 10 and Amendment VI, and Amendment XIV Section I of the U.S. Constitution.

3.    The Trial Court Erred when it submitted multiple convictions to the jury in order to convict Appellant of having Weapons Under Disability (R.C.2923.13), Which was prejudicial and deprived Appellant of a fair trial and Due Process of Law as Guaranteed by the 14th Amendment of the U.S. Constitution Article I and Section 16, of the Ohio Constitution.

4.    Appellant Counsel was ineffective for failing to raise the issue that the trial counsel was ineffective by submitting evidence of prior bad acts which deprived Appellant of a fair trial and Due Process of law as guaranteed by the 14th amendment of the U.S. Constitutional and section 16 Article I of the Ohio Constitution.

5.    Appellant Counsel was ineffective for failure to raise as a single assignment of error violation of evidence rule 404 which violated appellants right to due process of law and deprived him of a fair trial as guaranteed by the 14th Amendment of the U.S. Constitution and section 16, article I of the Ohio Constitution.

6.    Appellant Counsel was ineffective for failure to raise the fact that the trial court gave faulty jury instructions regarding the RVO specification, in violation of both the Appellants Ohio and U.S. Constitutional Rights which violated appellants right to due process of law and deprived him of a fair trial as guaranteed by the 14th Amendment of the U.S. Constitution and section 16, article I of the Ohio Constitution.

7.    Appellant Counsel was ineffective for failure to raise and preserve the Ohio and U.S. Constitutional violations that occurred when the trial court committed prejudicial error in permitting the jury to determine the existence and nature of Appellant's prior conviction for an offense of violence, in violation of R.C. 2941.149. And was deprived of a fair trial and Due Process law as guaranteed by the 14th Amendment to the U.S. Constitution and Section 16, Article I of the Ohio Constitution.

*Id*. The State responded in opposition. (Ex. 39). On September 26, 2017, the state appellate court denied Young's application for reopening. (Ex. 40, Decision and Entry). The day after the judgment, Young filed a delayed reply to the State's opposition. (Ex. 41, Memorandum in

Opposition of Contra).

Young, *pro se*, filed an appeal of the state appellate court's September 26, 2017 judgment to the Ohio Supreme Court. (Ex. 42, Notice of Appeal, 17-1545). Young asserted the following propositions of law:

I.      Appellate Counsel was ineffective for failing to file a motion to certify a conflict pursuant to App.R.25 depriving Appellant of Due Process rights & Equal protections of the Law as Guaranteed by the 14th Amendment of the U.S. Constitution and section 16, Article I of the Ohio Constitution.

II.     Appellant Counsel was ineffective for failure to raise the Issue that a Pre-trial motion requesting an Expert witness was not ruled on before trial which denied the Appellant a fair trial in violation of, Ohio Constitution I§10  and Amendment VI, and Amendment XIV Section of the U.S. Constitution.

III.    The Trial Court erred when it submitted multiple convictions to the jury in order to convict Appellant of having weapons under disability (R.C.2923.13), which was prejudicial and deprived Appellant of a fair trial and Due Process of Law as Guaranteed by the 14th Amendment of the U.S. Constitution Article I and Section 16, of the Ohio Constitution.

IV.    Appellant Counsel was ineffective for failing to raise the issue that the trial counsel was ineffective by submitting evidence or prior bad acts which deprived Appellant of a fair trial and Due Process of law as guaranteed by the 14th amendment of the U.S. Constitutional and section 16 Article I of the Constitution.

V.     Appellant Counsel was ineffective for failure to raise as a single assignment of error violation of evidence rule 404 which violated appellants right to due process of law and deprived him of a fair trial as guaranteed by the 14th Amendment of the U.S. Constitution and section 16, article I of the Ohio Constitution.

VI.    Appellant Counsel was ineffective for failure to raise the fact that the trial court gave faulty jury instructions regarding the RVO specification, in violation of both the Appellants Ohio and U.S. Constitutional Rights which violated appellants right to due process of law and deprived him of a fair trial as by the 14th Amendment of the U.S. Constitution and section 16, article I of the Ohio Constitution.

VII.   Appellant Counsel was ineffective for failure to raise and preserve the

> Ohio and U.S. Constitutional violations that occurred when the trial court committed prejudicial error in permitting the jury to determine the existence and nature of Appellant's prior conviction for an offense of violence, in violation of R.C. 3941.149. And was deprived of a fair trial and Due Process of law as guaranteed by the 14th Amendment to the U.S. Constitution and Section 16, Article I to the Ohio Constitution.

(Ex. 43, Memorandum in Support of Jurisdiction). Hereto, the State file an opposition. (Ex. 44, State's Memorandum in Opposition). On February 28, 2018, the Ohio Supreme Court declined to accept jurisdiction. (Ex. 45, Entry, 17-1545).

**C.     Postconviction Relief**

**1.     Motion for Sentencing and Motion for Issuance of a Final Appealable Order**

On April 18, 2016, while the direct appeal was pending, Young filed a *pro se* motion for sentencing and a motion for issuance of a final appealable order. (Ex. 15, Young's Motion for Sentencing and Motion for Issuance of a Final Appealable Order). He argued that the trial court's December 15, 2015 judgment was void because it did not merge certain offenses. *Id.* The State opposed the motion. (Ex. 16, Response to Defendant's Motion for Sentencing and Issuance of a Final Order). On June 13, 2016, the trial court denied Young's motion. (Exhibit 17, Judgment Entry).

Young filed an appeal to the state appellate court of the denial of his motion for sentencing and issuance of a final appealable order, on July 14, 2016.[7] (Ex. 18, Notice of Appeal, Case No. E-16-0044). The state appellate court noted that the trial court's December 15, 2015 judgment was a final appealable order; and therefore, Young's trial court motions for sentencing and to issue a final appealable order were treated as a motion for reconsideration of the trial court's prior

---

[7] Petitioner's Appeal of the denial of his motion for reconsideration of the trial court's final judgment docket, E-16-004, is located at Ex. 65.

judgment. (Ex .19, Decision and Judgment of 8/19/16). That court asserted because "there is no authority for filing a motion for reconsideration of a final judgment, …such motions are considered a nullity." (Ex. 19). Accordingly, on August 19, 2016, the state appellate court *sua sponte* dismissed the appeal. (Ex. 19).

Young filed a motion for reconsideration of the August 19, 2016 judgment dismissing his appeal; the State filed a response and Young filed a reply. (Ex. 20, Motion for Reconsideration; Ex. 21, Appellee's Response to Appellant's Motion for Reconsideration; Ex. 22, Motion/Memorandum Contra Appellee's Response). On October 21, 2016, the state court of appeals denied the motion for reconsideration, finding that the motion was untimely and did not call attention to an obvious error or raise an issue for consideration that was not properly considered. (Ex. 23).

On November 16, 2016, Young appealed the state appellate court judgments dismissing his appeal *sua sponte* for lack of jurisdiction and denying his motion for reconsideration to the Ohio Supreme Court. (Ex. 24, Notice of Appeal, Case No. 16-1718). There Young raised the following verbatim propositions of law:

I.   Equal protection is implicated and due process violated where, as here, an intermediate state appellate court dismisses an appeal as of right (filed pro se) on the basis of an opinion predicated on facts and evidence manifestly outside of the record and the evidence. see: U.S.C.A. Const. Amends. 6 and 14; and, *compare: State v. Stephens (1970), 24 Ohio St. 2 76, at: 83, to wit:

"Where opinions [on guilt] are expressed on facts outside the evidence, or are predicated on facts outside the evidence, such opinions have not been countenanced an the judgment in those cases have been reversed on appeal." Id.

II.  Due process is implicated where an application for *reconsideration and/or *reopening, App. R. 26, presenting a prima facie case for relief, is denied on the basis of 'timeliness' where said application clearly show that it was served on prison officials many days in advance of the expiration of the 10-

day time limitation. <u>see</u>: <u>State v. Polen</u>, 1998 Ohio App. LEXIS 3252 ['the prisoner's mailbox rule'], at: HN4, citing: <u>State v. Williams</u> (1967), 10 Ohio St. 3d 195, 226 N.E. 2D 735; and U.S.C.A. Const. Amend. 14.

III.  Due process is violated thereby implicating both a judgment of conviction and a final appealable order where a trial court both: (1) fails to cause its judgment or conviction/sentence to be journalized on the docket of the court; and, (2) relies on ['two documents'] for the purpose of constituting a final appealable order. <u>see</u>: <u>State v. Baker</u>, 119 Ohio St. 3d 197, at: ¶17; Crim. R. 32(C); Sup. R. 7(A); and, <u>State v. Orosz</u>, 2008 Ohio 3841 (6th Dist.), at: ¶8-¶10.

(Ex. 25, Young's Memorandum in Support of Jurisdiction). The State waived its right to file a response. (Ex. 26, Waiver of Memorandum in Response). The Ohio Supreme Court declined to accept jurisdiction of the appeal, on April 19, 2017. (Ex. 27, Entry).

## 2.  Motion for a New Trial

On June 13, 2018, Young moved the trial court for a new trial. (Ex. 56, Motion for a New Trial). He argued the following irregularities in the proceedings: 1) the repeat violent offender specification was sent to the jury which in turn tainted the jury; and 2) the seizure of a Western Union document from which police derived Young's address and other data was an illegal search and seizure in violation of the Fourth Amendment of the U.S. Constitution. *Id.* The State opposed the motion and Young filed a reply. (Ex. 57, Memorandum in Opposition to Motion for New Trial; Ex. 58, Motion/Memorandum Contra, "State's Response"). The trial court denied the motion for a new trial, on June 27, 2018. (Ex. 59, Judgment Entry).

Young, *pro se*, filed an appeal of the denial of his motion for a new trial.[8] (Ex. 60, Notice of Appeal, E-18-042). He asserted the following assignments of error:

1.  Appellant received constitutionally ineffective assistance of counsel and was deprived of a fair trial and due process of law as guaranteed by the

---

[8] The docket from Young's appeal is located at Ex. 67.

14th Amendment of the U.S. Constitution and Section 16, Article 1 of the Ohio Constitution.

2.  The trial court erred when it allowed evidence obtained from an illegal search and seizure into court violating the 5th Amendment of the U.S. Constitution, and Article 1 Section 10 of the Ohio Constitution.

3.  The trial court erred when it allowed the "*nature*" of the appellant's prior offenses to be submitted to the jury to convict the appellant of "*having weapons under disability*" which denied the appellant of a fair trial and due process of law as guaranteed by the 14th Amendment of the U.S. Constitution and Section 16, Article 1 of the Ohio Constitution.

(Ex. 61, Young's Brief). The State opposed. (Ex. 62, State's Brief). On September 20, 2019, the state appellate court affirmed the trial court's denial of the motion for a new trial. (*State v. Young*, 6th Dist. No. E-18-042, 2019-Ohio-3819 (Sept. 20, 2019)). Young filed a motion for leave to file a delayed appeal to the Ohio Supreme Court, on November 26, 2019. (*State v. Young*, No. 19-1625). The Ohio Supreme Court denied the request and dismissed the appeal. *State v. Young*, 2020-Ohio-122, 137 N.E.3d 1199.

### D.  Resentencing on the Repeat Violent Offender Specification (RVO)

On June 23, 2017, the mandate from the state appellate court remanding for resentencing was filed. (Ex. 63, trial court docket). On March 28, 2018, Young, *pro se*, filed a statement for re-sentencing. (Ex. 46, Young's Statement for Re-Sentencing). Young disputed the conclusion that allowing the jury to find the RVO specification was harmless error and requested the court vacate the judgment and conviction and grant a new trial. (Ex. 46). In addition, he moved for leave to file an amended statement for resentencing, in which he argued that his trial counsel was ineffective for failing to raise objections regarding the RVO specification and for failing to inform him of a plea offer. (Ex. 47, Young's Motion for Leave to File Amended Statements for Resentencing).

On June 14, 2018, the trial court held a resentencing hearing, found that Young was a repeat

violent offender, and ordered Young to serve an aggregate sentence of 36 years. (Ex. 48, Judgment Entry Re-Sentence).

Young, through counsel, appealed the resentence judgment to the state appellate court.[9] (Ex. 49, Notice of Appeal, E-18-035). Young asserted the following assignment of error:

> 1. The trial court's submission of the Repeat Violent Offender specification to the jury is reversible error.

(Ex. 50, Appellant's Brief.). Young presented the issue as follows:

> 1. When a trial court submits a Repeat Violent Offender specification to the jury, must the case be remanded for a new trial?

(Ex. 50) The State responded. (Ex. 51, State's Responsive Brief). The state court of appeals affirmed the re-sentencing, on May 10, 2019. (Ex. 55, Decision and Judgment, *State v. Young*, 2019-Ohio-1815).

On June 17, 2019, Young filed a notice of appeal to the Ohio Supreme Court. *State v. Young*, Case No. 19-0819 (Ohio) (June 17, 2019). He raised the following proposition of law:

> 1. When the trial court submitted the Repeat Violent Offender Specification to the jury, is it always a prejudicial as well as a reversible error.

*State v. Young*, Case No. 19-0819 (Ohio) (June 17, 2019). The State waived its response. *State v. Young*, Case No. 19-0819 (Ohio) (June 18, 2019). On August 6, 2019, the Ohio Supreme Court declined jurisdiction. *State v. Young*, 2019-Ohio-3148, 128 N.E. 3d 246.

**E.      Federal Habeas Petition**

Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus, on December 20, 2018, asserting the following grounds for relief:

**GROUND ONE**: Ineffective Assistance of Trial Counsel in violation of the 5th,

---

[9]  The docket from Young's appeal is located at Ex. 66.

6th, and 14th Amendments

*Supporting Facts*: trial counsel failed to object to motions filed not being ruled on before trial, failed to object to 404b violation and jury being tainted with evidence of prior convictions, failed to object to improper jury instructions pertaining to RVO, allowed improper vouching and other errors as complained of to the state courts in violation of his constitutional rights.

**GROUND TWO**: Ineffective assistance of Appellate counsel in violation of the 5th, 6th, and 4th amendments

*Supporting Facts*: Appellate counsel failed to raise on direct appeal that motions properly before the court at trial were not ruled on, failed to raise the trial court error of submitting multiple prior conviction to the jury to convict this appellant on prior bad acts rather than facts, that trial counsel failed to object to admission of prior bad acts and 404b violation, failed to raise the issue of improper jury instructions…pertaining to RVO and failed to raise a violation of 2941.149 and all violated this petitioners right to a fair appeal.

**GROUND THREE**: Improper denial of New Trial Motion in violation of the 5th and 14th amendments

*Supporting Facts*: After the state court of appeals held it was improper for the jury to have gotten RVO determination and supporting evidence there is no way this appellant could have received a fair trial by a tainted jury. Exculpatory evidence not considered and improper evidence allowed. All of which based on the explicit finding of error by the state court of appeals, made the denial of the new trial motion a violation of this petitioners constitutional rights.

(R. 1, PageID# 6-10). Respondent filed a return of writ (R. 13) and Young filed a traverse (R. 20). Young filed an unopposed request for leave to supplement his traverse (R. 22) which the court granted (R. 23).

### III.    Exhaustion and Procedural Default

#### A.    Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity

to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

### B.      Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id*.; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[10] *Id.*

---

[10] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional

law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.    Application**
**1.    Ground One**

In his first ground, Petitioner asserts ineffective assistance of trial counsel in violation of

the 5th, 6th and 14th Amendments. (R. 1, PageID# 6). In support, he argues that his trial counsel failed to object to 1) filed motions not being ruled on before trial, 2) 404b violations, 3) the jury being tainted with evidence of prior convictions, 4) improper jury instructions pertaining to the RVO, and 5) improper vouching. (R. 1, PageID# 6). Respondent contends that a portion of this ground is procedurally defaulted because Petitioner made additional arguments in his petition that constitute a new claim not fairly presented to the state courts. (R. 13, PageID# 67). In his traverse, (R. 20), Petitioner contends that he raised all these grounds on his direct appeal and provided record citations in his supplement (R. 22).

On direct appeal, Petitioner asserted that he received ineffective assistance of counsel under both the United States and Ohio Constitutions. (Ex. 11, PageID # 147, Young's Direct Appeal Amended and Supplemental Brief). [11] Respondent contends Petitioner did not assert that trial counsel was ineffective for failing to object to the specific issues he identifies in the petition, namely the state court motions not ruled on before trial, evidence rule 404b violations, alleged improper jury instructions pertaining to the RVO, and vouching. (R. 13, PageID 73). Petitioner does not provide any specific argument or record citations that these issues were not properly raised below, but rather explains that his ineffective assistance of counsel claim is based on three separate sub-claims, stemming from his direct appeal:

1. Failing to object to the detective's testimony about the appellant's "codefendant's" plea agreement;
2. Failing to object to improper testimony about appellant's prior record;
3. Failing to object to police identification of this petitioner from pictures and emails during testimony. [12]

---

[11] The state appellate court, on April 26, 2017, acknowledged that Young's initial appeal brief through appointed counsel was stricken because he was appointed new appellate counsel who filed the operative Amended and Supplemental Brief. (Exs. 10, 11).
[12] This particular subclaim is not listed in the Petition. However, as it was clearly raised and

(R. 20, PageID# 1668-69).

In considering the pertinent filings, the court concludes that on direct appeal Petitioner arguably raised all but one of the five specific errors presented in ground one of his present Petition, as further explained below. Petitioner did not assert that his trial counsel erred by failing to object to filed motions not being ruled on before trial.[13]

The Sixth Circuit has held that proper exhaustion of a claim requires presenting the claim in state court under the same theory in which it is later presented in federal court. *See Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (holding that "the exhaustion doctrine requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review") (*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *accord Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)); *Zich v. Haviland*, No. 3:18CV02515, 2020 WL 7684940, at *25 (N.D. Ohio Apr. 30, 2020), *report and recommendation adopted*, 2020 WL 7237289 (N.D. Ohio Dec. 9, 2020) (Gwin, J.).

Any claims that Petitioner could have asserted in his direct appeal, but did not, are defaulted under the well-established doctrine of *res judicata*. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001); *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Petitioner cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were

_____

disposed of on direct appeal, and Respondent asserts a response in the Return of Writ, this court will address the merits of this claim below.

[13] Petitioner did, however, raise this issue as an ineffective assistance of appellate counsel, which will be addressed below.

not) will be barred from consideration on appeal following remand, under the doctrine of *res judicata*. *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998). Because Ohio law would not permit Petitioner to raise this particular claim, it is defaulted. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal."); *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) ("In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.").

As to the alleged failure to object to Evidence Rule 404b violations, Petitioner argued on direct appeal that, under *Strickland*, his counsel was ineffective by allowing testimony regarding his prior criminal record and convictions. (Ex. 11, PageID# 155, Direct Appeal brief). Petitioner also cited to cases interpreting the Ohio Revised Code and Evidence Rule 404b. *Id.* The State responded, arguing that even if inadmissible under Evid.R. 404b, the testimony was admissible for purposes of establishing the element of disability for the offense of possessing a weapon under disability. (Ex. 12, PageID# 190-192). Thereafter, Petitioner raised this issue to the Ohio Supreme Court. (Ex. 29). This ground is not procedurally defaulted.

Petitioner argued on direct appeal, in connection with the vouching issue, that "Detective Sergeant Newell vouched for the credibility of a testifying co-defendant, Mr. Jefferson on multiple occasions." (Ex. 11, PageID # 153). The State noted that "Young's first allegation of ineffective assistance argues that his trial counsel should have objected to testimony from Detective Newell that related to Thaddious Jefferson's plea agreement on the grounds that the testimony improperly vouched for Jefferson's credibility." (Ex. 12, PageIDs# 186). The State argued that such an

objection would not have been meritorious and that the results of the trial would not have been different even if such an objection was sustained. *Id.* Petitioner further raised this issue to the Ohio Supreme Court. (Ex. 29). This ground is not procedurally defaulted.

Regarding jury instructions, Petitioner's first assignment of error on direct appeal argued that "Counsel was further ineffective for failing to object, and requesting that the court submit the repeat violent offender specifications to the jury for determination. See Second Assignment of Error." (Ex. 11, PageID# 157). In his second assignment of error, Petitioner asserted that "the trial court committed prejudicial error in permitting the jury to determine the existence and nature of Appellant's prior conviction for an offense of violence in violation of R.C. 2941.149." (Ex. 11, PageID # 158). He asserted that the court erred by instructing the jury to use his prior convictions as "other acts" evidence pursuant to 404(B). (Ex. 11, PageID# 159). Petitioner further argued his "prior convictions and suspected auto theft, and acquitted charges, were never admitted as other acts evidence. While the fact of the conviction alone would have been admissible as part of the Weapons Under Disability charge, it was based on the repeat violent offender specification that the jury was wrongly instructed that it could consider other acts evidence." (Ex. 11, PageID# 160). By incorporating this argument into his first assignment of error, Petitioner raised the issue of jury instructions on direct appeal. While the State responded to Petitioner's second assignment of error, it did not address the jury instruction issue, instead stating "Even if trial court did err by submitting the repeat violent offender determination to the jury, Young is not entitled to take advantage of the trial courts error because it was his own counsel who induced the trial court into making the error." (Ex. 12, PageID#195). In his reply brief, Petitioner notes that the State did not address his argument that his counsel was ineffective regarding jury instructions. (Ex. 13, PageID# 212). Petitioner further raised this issue to the Ohio Supreme Court. (Ex. 29). This ground is not procedurally

defaulted.

Regarding Petitioner's contention that his trial counsel was ineffective for failing to object to filed motions that were not ruled on before trial, the court concludes that this issue was not raised on direct appeal and is therefore procedurally defaulted. Petitioner first raised this issue in his September 11, 2017 Application for Reopening pursuant to App.R. 26(B), claiming his *appellate* counsel was ineffective for failing to raise the issue that the court failed to rule on a pre-trial motion. (Ex. 38, PageID# 406). The state appellate court denied this motion. (Ex. 40). Petitioner cannot point to his ineffective assistance of appellate counsel for failing to raise a claim that his trial counsel was ineffective for failing to object to a pretrial motion argument to support a claim that he has preserved his argument that this trial counsel was ineffective for failing to object to the pretrial motion. *See*, *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). These claims are analytically distinct and raising an ineffective assistance of appellate counsel claim does not preserve an ineffective assistance of trial counsel claim. *Id.* Petitioner has not argued that he had good cause for failing to raise the issue on direct appeal.

The court will address the merits of Petitioner's ineffective assistance of trial counsel claim to the extent he raised the same arguments on direct appeal below.

### 2.     Ground Two

In his second ground, Petitioner asserts ineffective assistance of appellate counsel in violation of the 5th, 6th, and 4th amendments. (R. 1, PageID# 7). Respondent does not challenge ground two on procedural default grounds, but rather attacks it on the merits. The court concludes that Petitioner properly raised his alleged grounds for ineffective assistance of appellate counsel via his App.R. 26(b) motion to reopen his direct appeal.

Here, Petitioner cites to the following alleged errors supporting his claim that his appellate

counsel was ineffective because he: 1) failed to raise on direct appeal that motions properly before the court at trial were not ruled on; 2) failed to raise the trial court error of submitting multiple prior conviction to the jury to convict Young on prior bad acts rather than facts; 3) failed to raise that trial counsel failed to object to admission of prior bad acts and 404b violation; 4) failed to raise the issue of improper jury instructions pertaining to RVO; and 5) failed to raise a violation of O.R.C. 2941.149. (R. 1, PageID# 7).

These arguments track assignments of error two through seven in Petitioner's Application for Reopening pursuant to App.R. 26(B). (R. 38). Further, after the state court of appeals denied the application on its merits, (Ex. 40), Petitioner raised these issues to the Ohio Supreme Court (Ex. 43). Thus, these claims are not procedurally defaulted.

### 3.      Ground Three

In his third ground for relief, Petitioner contends that the trial court improperly denied his post-conviction motion for a new trial, in violation of the 5th and 14th amendments. (R. 1, PageID# 10). Respondent asserts that this ground is not cognizable in federal habeas corpus, is meritless, and is procedurally defaulted. (R. 13, PageID # 82).

On June 13, 2018, thirty months after the trial court verdict, Petitioner filed a motion for a new trial. (Ex. 56). This motion is the basis for Petitioner's ground three. The trial court denied the motion (Ex. 59), and on July 24, 2018, Petitioner appealed. (Ex. 60, 61). Notably, the legal arguments in Petitioner's appeal was different than legal arguments in his motion for a new trial itself. (R. 16, PageID# 1648; Ex. 62, PageID# 602). This appeal was pending when Petitioner filed his Petition here and when Respondent filed the Return of Writ. (Ex. 67). Accordingly, Petitioner filed a motion for stay and abeyance to allow exhaustion of the third ground for relief. (R. 5). In denying his motion for stay and abeyance, this court stated

> The respondent's argument that the motion for new trial claim is not cognizable in federal habeas corpus proceedings is well-taken. The alleged errors of state law regarding the admission or exclusion of evidence (the underlying basis of the motion for new trial) are not generally within the purview of a federal habeas court. *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). *See also Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005); *Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir.), cert. denied, 540 U.S. 930 (2003).

(R. 16, PageID# 1649). Therefore, this court has already determined that Petitioner's claim "is meritless because it is not cognizable in federal habeas corpus proceedings. (R. 16, PageID# 1650).

In the interim, the state appellate court issued its decision affirming the trial court's denial of the motion to stay. *State v. Young*, 6th Dist. Erie No. E-18-042, 2019-Ohio-3819.[14] The state appellate court concluded that Petitioner's motion for a new trial was untimely filed, and that he did not establish facts to suggest that he was unavoidable prevented from timely filing the motion. *State v. Young*, 6th Dist. Erie No. E-18-042, 2019-Ohio-3819, ¶10-11.

Further, the state appellate court, which was the last state court to consider the claim, reasoned as follows:

> [*P14] In his first assignment of error, Young asserts an ineffective assistance of counsel claim. As discussed, Young previously raised an ineffective assistance claim on direct appeal. Although his reasons for now asserting the claim are different than those raised in *Young I*, Young does not rely upon any new evidence dehors the record. Therefore, the doctrine of res judicata bars him from raising this ineffective assistance of counsel claim.

> [*P15] In his second assignment of error, Young alleges that the trial court erred "when it allowed evidence obtained from [the] illegal warrantless search and seizure" of the Western Union document from Kroger. This claim could have been raised on direct appeal, and it is therefore barred by res judicata. *See Perry* at 182. In addition, we note that Young has no standing to assert this challenge. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L. Ed. 2d 387 (1978) ("A person

---

[14] This decision was not filed as an exhibit in this case, as it was released after briefing on the Petition was complete.

who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.").

[*P16] Finally, in his third assignment of error, Young alleges that the trial court erred when it allowed "the nature" of his prior offenses to be submitted to the jury in violation of Evid.R. 404(B). We have previously found that evidence of Young's prior convictions was "admissible to prove the possessions of weapons under disability charge." *Young I* at ¶ 21. Young may not re-litigate that issue. *State v. Casey*, 12th Dist. Clinton No. CA2017-08-013, 2018-Ohio-2084, ¶ 20, 113 N.E.3d 959.

*State v. Young*, 6th Dist. Erie No. E-18-042, 2019-Ohio-3819, ¶¶ 14-16. The state appellate court, therefore, found each of the grounds in Petitioner's motion for a new trial barred by the *res judicata* doctrine, as the issues could have been raised on direct appeal. The Sixth Circuit consistently has held that the *res judicata* rule is an adequate and independent ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Petitioner further defaulted this claim by failing to timely appeal the state appellate court judgment to the Ohio Supreme Court, leaving him with no available state-court remedy. *See, e.g., Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (to preserve claims for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims"); Ohio S. Ct. Prac. R. 7.01(A)(1), (A)(4)(c) (notice of appeals in Ohio Supreme Court must be filed within forty-five days from entry of judgment being appealed and delayed appeals are not permitted in post-conviction proceedings); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). Petitioner asserts that his appeal "was only 1 day late and even that small untimeliness was no fault of his own but completely external to the defense." (R. 22, PageID # 1689). It is well-

established that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted). The Sixth Circuit repeatedly has rejected petitioners' attempts to blame their failure to comply with procedural requirements on their ignorance of the law or on their limited prison resources. *See, e.g.*, *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default). Accordingly, Petitioner has not established cause for the default of his ground three claims.

Ground three, therefore, is procedurally defaulted.

## IV.    Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id*. at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

A.      **Grounds One and Two: Ineffective Assistance of Counsel**

Petitioner's first and second grounds for relief assert ineffective assistance of trial and appellate counsel. (R. 1).

When addressing an ineffective assistance of counsel claim, courts apply the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to

demonstrate both that: (1) his counsel's performance was deficient and (2) the allegedly ineffective assistance resulted in prejudice to the petitioner. The first element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The second element "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Moreover, to establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lundgren v. Mitchell,* 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted). The *Strickland* court explained that "[u]nless a defendant makes both showings, it cannot be said that the conviction… resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. In addition*,* the *Strickland* standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Where the state appellate court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, its ruling must constitute an unreasonable application of the *Strickland* standard for the petitioner to receive habeas relief. *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted). The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

When a habeas petitioner asks the court for relief based on ineffective assistance of counsel

concerning a plea, the Supreme Court requires the district court to employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013); *see also Cullen v. Pinholster,* 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted). Petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 562 U.S. at 103; *see also Montgomery v. Bobby,* 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied,* 566 U.S. 991 (2012) (quoting *Richter*).

### 1.    Ground One

In his first ground for relief, Petitioner asserts ineffective assistance of trial counsel in violation of the 5th, 6th and 14th Amendments. (R. 1, PageID# 6). In support, he states that his trial counsel failed to object to the following: 1) motions not being ruled on before trial,[15] 2) Evidentiary Rule 404(b) violations, 3) the jury receiving evidence of prior convictions, 4) improper jury instructions pertaining to the repeat violent offender (RVO) specification, and 5) improper vouching. (R. 1, PageID# 6). Petitioner, however, has limited his arguments to the following issues:

1. Failing to object to the detective's testimony about the appellant's "co defendant's" plea agreement;
2. Failing to object to improper testimony about appellant's prior record;
3. Failing to object to police identification of this petitioner from pictures and emails during testimony.

---

[15] As noted above, Petitioner procedurally defaulted the argument that his trial counsel failed to object to the trial court not ruling on pre-trial motions.

(R. 20, PageID# 1668-69).[16]

The state appellate court addressed Young's ineffective assistance of counsel claim as follows:

> [*P13] "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). In *State v. Lytle*, 48 Ohio St.2d 391, 396-97, 358 N.E.2d 623 (1976), the Ohio Supreme Court developed a two-step process to determine if counsel's assistance was ineffective:
>
>> First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.
>>
>> In addition, "[t]he defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.
>
> [*P14] At trial, appellee presented the videotaped proffer between co-defendant and a detective. In the video footage, the detective said, "I'm going to talk to you about what happened with two incidences [sic] and then that's it, okay? Then the deal — but you have to be completely honest with me, okay? That's part of the deal." Appellant argues that this improperly bolstered co-defendant's credibility. Appellant cites *State v. Pruett*, 2015-Ohio-1377, 31 N.E.3d 197 (8th Dist.), to argue that "the opinion of a witness as to whether another witness is being truthful is inadmissible." *Id.* However, in *State v. Williams*, 79 Ohio St.3d 1, 1997 Ohio 407, 679 N.E.2d 646 (1997), the Ohio Supreme Court determined that similar evidence was not bolstering, rather the party was simply "exploring the basis of the plea arrangements." According, appellant has not demonstrated that the outcome of the trial would have been different even if counsel had objected to this evidence.

---

[16] The court therefore limits its merits review to these three issues. As to the other issues asserted in the Petition but not supported or otherwise argued in his Traverse, the court concludes that Petitioner has not met his burden to establish that the state court's decision on those issues is contrary to clearly established federal law for purposes of habeas review.

[*P15] Appellant further suggests that counsel was ineffective in failing to object to testimony about his prior criminal record. Our review shows that the introduction of this evidence was necessary in order for the court to evaluate appellant's culpability in the possessing a weapon under disability charge. Nevertheless, even assuming arguendo that counsel erred in not objecting, appellant has not shown the probability of a different outcome but for this claimed error of counsel.

[*P16] Lastly, appellant suggests that the police identification of appellant from pictures and emails was improper. We do not concur. The Tennessee police interviewed appellant face-to-face and in close proximity. They had dealings with and were familiar with appellant. The reliability of their identification was supported by ample evidence. Appellant has not shown the probability of a different outcome but for counsel's failure to object to the properly introduced evidence. Wherefore, we find appellant's first assignment of error not well-taken.

(Ex. 14); *State v. Young*, 2017-Ohio-4476, ¶¶ 13-16 (Ct. App.).

Petitioner fails to establish that the state appellate court's decision was an unreasonable application of *Strickland* under the doubly deferential standard, as explained below.

### a)  Detective's Statements On Plea Agreement

According to Petitioner, his trial counsel was ineffective for failing to object to the detective's testimony about his co-defendant's plea agreement. (R. 1). Petitioner argues that this was prejudicial error because the co-defendant's credibility was at issue so "any support given…of this witnesses [sic] statements is much more than bolstering and goes more into condoning perjury and counsel was clearly constitutionally ineffective for not objecting and allowing the jury to hear this unchallenged as it sends a message of acceptance and credibility to that statement which is not merited." (R. 20, PageID# 1669). Petitioner summarily states that had his counsel objected and "exposed to the jury the true basis of the plea agreement" the outcome of the trial would have been different. *Id*. Here, Petitioner's argument is broader than he presented on direct appeal. On direct appeal, Petitioner's assignment of error argued that trial counsel erred by not objecting to the detective's statements "bolstering" the co-defendant's credibility, which Young asserted was

prejudicial as he contented the only evidence against him was "a surveillance video that does not clearly identify the suspect's face, and testimony from the co-defendant who was the only one caught at the scene of the crime who had every motivation to pin these crimes on someone else." (Ex. 11, PageID # 154, 157). As such, Petitioner focused on the alleged bolstered credibility of the co-defendant, arguing without it the results of his trial would have been different. Here, Petitioner's prejudice argument goes beyond faulting his trial counsel for not objecting to the detective's allegedly improper statements. Petitioner asserts that his trial counsel should have "vigorously exposed to the jury the true basis of the plea agreement." (R. 20, PageID# 1670). This court is limited to the merits of the issue actually argued in the state appellate court.

The state appellate court concluded that counsel did not err by failing to object to the video footage because it was proper under Ohio case law to explore the basis of the plea agreement. (Ex. 14); *Young*, ¶14. In its decision, the state appellate court set forth the undisputed facts presented at trial, which are fully quoted in this court's factual recitation above. (Ex. 14); *Young*, ¶3-10. In particular, the state appellate court cited to the following evidence presented at trial: security footage of the Shell robbery that investigators used to identify Petitioner, security footage of the ATM attempted break in that linked a crow bar with lime green paint found at Petitioner's apartment to the attempted break in, a footprint near the ATM that matched the shoes Petitioner was wearing when he was arrested, and the co-defendant's testimony. (Ex. 14); *State v. Young*, 2017-Ohio-4476, ¶¶6-10. The state appellate court concluded that, even if trial counsel had objected to the detective's statements, Petitioner did not demonstrate prejudice. (Ex. 14); *State v. Young*, 2017-Ohio-4476, ¶14. The state appellate court did not unreasonably apply the *Strickland* standard.

### b)   Prior Criminal Record

Petitioner contends that his trial counsel was ineffective by failing to object to testimony regarding his prior criminal record. (R. 1). Petitioner intertwines this argument with his argument that his trial counsel was ineffective for failing to object to the trial court submitting the RVO specifications to the jury. Petitioner merges these two distinct issues into one, essentially arguing that the his trial counsel was ineffective for allowing the jury to hear testimony regarding his criminal history because the RVO was not before the jury and the details of his criminal history were not necessary for the jury to consider the weapons under disability charge. Thus, he argues, because of the trial court and counsel's error, the jury heard more testimony regarding his criminal history than was necessary and were therefore tainted. Petitioner argues that without that in-depth testimony regarding his criminal history, the results of his trial would have been different. (R. 20, PageID # 1664).

The state appellate court concluded that Petitioner's trial counsel was not ineffective by failing to object to the introduction of the evidence because Young's criminal record was properly admitted "to evaluate appellant's [Young's] culpability in the possessing a weapon under disability charge." (Ex. 14); *Young,* ¶15. Further, the state appellate court concluded that even if trial counsel's failure to object was in error, Petitioner could not show that the results of his trial would have been different. *Id*. Regarding the RVO specification, the state appellate court agreed that the trial court erred in allowing the jury to determine Petitioner's RVO status, because that issue was for the court to decide. (Ex. 14); *Young*, ¶17. The state appellate court explained:

> [*P21] We note that our reversal in this matter is limited to the sentencing finding that appellant is a repeat violent offender. In this case, appellant's prior convictions would have been admissible to prove the possessions of weapons under disability charge pursuant to R.C. 2923.13. We further note that under these circumstances, the finding by the jury rather than the court that appellant is a repeat violent offender

constitutes harmless error as there would have been no reasonable probability that this evidence may have contributed to appellant's underlying convictions. *See State v. Rahman*, 23 Ohio St.3d 146, 151, 23 Ohio B. 315, 492 N.E.2d 401 (1986).

(Ex. 14); *Young*, ¶¶ 21.

In other words, because any error on the part of trial counsel not to object to the criminal history testimony was not prejudicial, the trial court's error in submitting the RVO to the jury was harmless.

The state appellate court's determination under the prejudice prong of *Strickland* was not unreasonable. As noted above, the state appellate court set forth a multitude of facts presented at trial that supported the jury verdict, even without the criminal history testimony. (Exs. 14; 37); *Young*, at ¶6-10. Thus, the state appellate court's determination that the results of Petitioner's trial would not have been different is not unreasonable. (Ex. 14); *Young*, at ¶15.

The state appellate court also concluded that the trial court erred in submitting the RVO issue to the jury because Ohio law, R.C. 2941.149, required the trial court to make the RVO finding. *Id.* at ¶20. However, the state appellate court determined this error was harmless because the jury had to consider Petitioner's criminal history for purposes of the weapons under disability charge, and because there was no reasonable probability that the evidence contributed to Petitioner's underlying convictions. (Ex. 14); *Id.* at ¶21. Respondent contends that the state appellate court's review and decision regarding the RVO is a matter of state law and therefore not cognizable here. (R. 13, PageID# 61). This court notes that Petitioner did raise this issue below as an ineffective assistance of counsel claim under *Strickland:* "Counsel was further ineffective for failing to object, and requesting that the court submit the repeat violent offender specifications to the jury for determination. See Second Assignment of Error." (Ex. 11, PageID# 157). Thus, a constitutional issue was fairly presented to the state court. *Newton,* 349 F.3d at 877.

The state appellate court determined that there was no reasonable probability that the criminal history evidence contributed to Petitioner's underlying conviction, therefore, Petitioner could not establish prejudice. (Ex. 14); *Young*, at ¶21. The state appellate court laid out a multitude of facts presented at trial that supported the jury verdict even without the criminal history testimony, and therefore, the state court did not unreasonably apply the *Strickland* standard.

### c)  Police Identification

Lastly, Petitioner contends that his trial counsel erred in failing to object to police identification of Petitioner from pictures and email. (R. 1). On direct appeal, Petitioner argued "[t]he picture and email sent to Sergeant Hicks was suggestive. Appellant's counsel should have objected to it, and filed a Motion to Suppress the identification. He failed to do so, and as such, violated Appellant's right to due process." (Ex. 11, PageID# 156). The State countered that the officer's identification was not an eye-witness identification and had no indication of unreliability. (Ex. 12, PageID # 193). The State further argued that the "lynchpin question for the court is whether, under the totality of the circumstances, the identification was reliable." (Ex. 12, PageID# 193, citing *State v. Henderson*, 6th Dist. Lucas No. L-10-1122, 2012-Ohio-1396, ¶1). The state appellate court determined that the identifications were properly introduced and that they were supported by ample evidence. (Ex. 14); *Young*, at ¶16. The state appellate court determined:

> [*P16] Lastly, appellant suggests that the police identification of appellant from pictures and emails was improper. We do not concur. The Tennessee police interviewed appellant face-to-face and in close proximity. They had dealings with and were familiar with appellant. The reliability of their identification was supported by ample evidence. Appellant has not shown the probability of a different outcome but for counsel's failure to object to the properly introduced evidence. Wherefore, we find appellant's first assignment of error not well-taken.

(Ex. 14); *Young*, ¶16. Consequently, the state appellate court also determined that Petitioner could not establish prejudice.

Petitioner does not establish that the state appellate court's ruling on this issue was unreasonable. Contrary to Petitioner's argument on direct appeal that trial counsel was ineffective for failing to assert that the pictures and email sent to the officer for identification were suggestive, trial counsel did in fact make this argument. On cross-examination, the officer explained that when the investigating officers sent him the surveillance photos via email and asked "is this Randy Young?" (R. 13-3, PageID# 1095). Trial counsel stated "[s]o it's kind of suggestive that here's the answer we want. We just want you to verify this guy." (R. 13-3, PageID# 1095). The officer confirmed that he was not given any other names. *Id.* Thus, the jury was aware of this issue and Petitioner cannot establish that the results of his trial would have been different.

Petitioner contends here that the identification was not reliable because the witness was biased and not credible. (R. 20, PageID# 1671). Petitioner asserts that his trial counsel should have cast doubt on the reliability of the identification that Petitioner was the man in the surveillance video by pointing out that Petitioner had a tattoo on his face which could not be seen on the man in the video. (R. 20, PageID # 1671). This court notes that the surveillance stills were introduced as exhibits at the trial, and therefore shown to the jury. (R. 13-3, PageID # 1084-85). Further, there is no indication that the jury could not see Petitioner's tattoo during the trial. Thus, there is no indication that the jury did not make this connection themselves before making the determination of the witness's credibility. As such, Petitioner cannot establish that if his trial counsel raised this issue, that the results of his trial would have been different.

Finally, Petitioner argues that the officer falsely identified him to "get even" with him for "beating a case in Memphis in which he was the lead detective." (R. 20, PageID # 1664). Petitioner concludes that trial counsel's "failure to object and show this to the jury was clearly ineffective assistance of counsel as it left the jury with a false sense of reliability in the police statement and

his identification[.]" *Id*. However, trial counsel did raise this issue before the jury on recross examination. (R. 13-3, PageID #461). Trial counsel questioned the officer about his motives for testifying, suggesting that Petitioner's acquittal in the prior case "still sticks in your craw even today, doesn't it?" (R. 13-3, Page ID# 459). Trial counsel further suggested that "You're willing to come up from Memphis to testify, to have another shot at getting Randy Young." (R. 13-3, PageID #461). The officer stated that he was subpoenaed and therefore did not have a choice. *Id*. Because the jury had the information, which Petitioner argues here his trial counsel should have provided, he cannot establish that the results of his trial would have been different. Therefore, the state appellate court decision was not an unreasonable application of the *Strickland* standard.

**B.      Ground Two**

Here, Petitioner cites to the following alleged errors supporting his claim that his appellate counsel was ineffective because he failed to raise: 1) "on direct appeal that motions properly before the court at trial were not ruled on[;]" 2) "the trial court error of submitting multiple prior conviction [sic] to the jury to convict this appellant on prior bad acts rather than facts[;]" 3) "that trial counsel failed to object to admission of prior bad acts and 404b violation[;]" 4) "the issue of improper jury instructions pertaining to RVO[;]" and 5) "a violation of [O.R.C.] 2941.149[.]" (R. 1, PageID# 7). The Sixth Circuit has explained,

> Failure of appellate counsel to raise an issue on appeal can amount to constitutionally ineffective assistance. *McFarland*, 356 F.3d at 710. Yet, counsel has no obligation to raise every possible claim and "the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *Id.* An appellate attorney is not required to raise a non-meritorious claim. *See Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007). In addition, of course, to warrant habeas relief, a petitioner must demonstrate that any deficiency in appellate counsel's performance resulted in *Strickland* prejudice. *Evans v. Hudson,* 575 F.3d 560, 564-65 (6th Cir. 2009).

*Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011). Notably, "Appellate counsel's failure

to raise a legal claim which lacks merit cannot be found to violate *Strickland's* deferential standard." *Keahey v. Bradshaw*, No. 3:16CV1131, 2018 U.S. Dist. LEXIS 172597, at *40 (N.D. Ohio Apr. 17, 2018).

In denying Petitioner's application to reopen pursuant to App.R. 26(B), the state appellate court stated,

> On September 11, 2017, appellant next filed an App.R. 26(B) application for reopening. We note that in support of this most recent filing, appellant again restates the various arguments suggesting that the underlying convictions were compromised by prejudicial error. These arguments have been repeatedly considered and rejected both on direct appeal and in response to prior motion filings. On consideration whereof, we find appellant's App.R. 26(B) application for reopening is without merit and is denied.

(Ex. 40, PageID# 426-27).

### 1. Pre-Trial Motions

Young's App.R 26(B) application argued that his appellate counsel was ineffective for failing to assert that his trial counsel was "ineffective for failure to raise the Issue that a Pre-trial motion requesting an Expert witness was not ruled on before trial which denied [Petitioner] a fair trial[.]" (Ex. 38, PageID# 406). Petitioner sought an expert to enhance the surveillance video to establish that the man on the video did not have a face tattoo like Petitioner. (Ex. 38, PageID # 406). Petitioner failed to argue that this was in error and that the results of his appeal would have been different. Even if he had, in Ohio, when a court does not rule on a motion, it is presumed denied. *Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053, ¶85. Therefore, this argument lacks merit and Petitioner cannot establish that appellate counsel erred in failing to raise the issue. *Keahey*, No. 3:16CV1131, 2018 U.S. Dist. LEXIS 172597, at *40. The state appellate court did not unreasonably apply *Strickland.*

### 2.  Prior Convictions

In addition, Young's App.R 26(B) application asserted that his appellate counsel was ineffective for failing to assert that "[t]he Trial Court Erred when it submitted multiple convictions to the Jury in order to convict [him] of having Weapons Under Disability[.]" (Ex. 38, PageID # 407). This argument is without merit because appellate counsel raised this issue in his second assignment of error on direct appeal. (Ex. 11, PageID# 158). Accordingly, the state appellate court did not unreasonably apply *Strickland.*

In his Application, Petitioner further asserted that his appellate counsel was ineffective for failing to raise the issue that his trial counsel was ineffective by "submitt[ing] evidence of prior bad acts[.]" (Ex. 38, PageID # 407). This argument is without merit. Appellate counsel raised the issue of trial counsel's failure to object to Petitioner's criminal record in his first assignment of error on direct appeal. (Ex. 11, PageID# 155-56). Even if he had not, Petitioner's argument would still be without merit. Petitioner suggests that his trial counsel submitted evidence of a prior bad act of which he was acquitted. (Ex. 38, PageID #408). This evidence was introduced during the testimony of Sergeant Shawn Hicks and was elicited by Petitioner's trial counsel to establish that Hick's testimony was unreliable because Petitioner was not convicted of a crime in which Hicks was the lead investigator. (R. 13-3, PageID # 1105). Further, trial counsel elicited this testimony to establish that when Petitioner was guilty of a crime, he admitted to it, but when he was innocent, he went to trial and was acquitted. (R. 13-3, PageID# 1101-02). Accordingly, the state appellate court did not unreasonably apply *Strickland*.

### 3.  Evid.R. 404B and Other Crimes

Petitioner's Application also argued that his appellate counsel was ineffective for failing to raise "as a single assignment of error violation of evidence rule 404." (Ex. 38, PageID # 408).

He asserted that his prior criminal history was inadmissible. This argument is without merit. Petitioner's argument here is identical to his third argument, above. Further, appellate counsel did raise this issue on appeal. (Ex. 11, PageID# 155). Accordingly, the state appellate court did not unreasonably apply *Strickland.*

### 4.     Improper Jury Instructions

In his Application, Petitioner asserted that his appellate counsel was ineffective for failing to raise the issue that the trial court gave faulty jury instructions regarding the RVO specifications. (Ex. 38, PageID # 409). This argument is without merit. Appellate counsel asserted in the second assignment of error that the trial court committed prejudicial error in permitting the jury to determine the existence and nature of Young's prior conviction of an offense of violence, in violation of R.C. 2941.149. (Ex. 11, PageID# 158). Appellate counsel specifically stated, "the court incorrectly instructed the jury as to the matter of repeat violent offender status." (Ex. 11, PageID #159). The state appellate court agreed and remanded. (Ex. 14, PageID# 223). Further, Petitioner's Application acknowledged that his appellate counsel addressed the violation of evidence rule 404(B). (Ex. 38, PageID# 409); (See Ex. 11, PageID# 159-160). There, appellate counsel argued that the court instructed the jury regarding using Petitioner's prior convictions as "other acts" evidence pursuant to Evid.R. 404(B) based upon the RVO specifications. (Ex. 11, PageID# 160; Ex. 13, PageID# 213). Accordingly, the state appellate court did not unreasonably apply *Strickland*.

### 5.   Violation of O.R.C. 2941.149.

Furthermore, Petitioner's Application asserted that appellate counsel "was ineffective for fail[ing] to raise and preserve the Ohio and U.S. Constitutional violations that occurred when the trial court committed prejudicial error in permitting the jury to determine the existence and nature

of [his] prior convictions for an offense of violence in violation of O.R.C. 2941.149, [a]nd was deprived of a fair trial and Due Process of law[.]" (Ex. 38, PageID# 411). This argument is without merit. Petitioner cannot establish that his appellate counsel erred by not phrasing the issue in constitutional terms:

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence .... While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Moreover, Young's appellate counsel argued, in the second assignment of error, that "the trial court committed prejudicial error in permitting the jury to determine the existence and nature of appellant's prior conviction of an offense of violence, in violation of R.C. 2941.149." (Ex. 11, PageID# 158). The appellate court agreed and remanded. (Ex. 14, PageID# 223). Further, Petitioner cannot establish that the results of his appeal would have been different had his counsel asserted the argument under constitutional grounds.

## V.    Conclusion

For the foregoing reasons, it is recommended that Young's Petition be DENIED in its entirety.

s/ David A. Ruiz
United States Magistrate Judge

Date: June 10, 2021

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).